No. 20,320.

THE JOHNSON STATE BANK, *Appellee*, v. GRANT RANEY et al., as THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STANTON, *Appellants.*

### SYLLABUS BY THE COURT.

1. PUBLIC FUNDS — *County Depositories* — *Responsible Banks* — *Banks Outside the County.* Under section 2163 of the General Statutes of 1909 only responsible banks are eligible to designation as county depositories, and if no responsible bank or banks will accept the public money or funds which come into the possession of the county treasurer and pay interest thereon, the board of county commissioners is authorized to designate other banks of the state outside of the county which will accept the money and funds, pay interest thereon and give a bond as the statute requires.

2. SAME—*County Commissioners to Determine Responsibility of Bank—Good Faith.* The board of county commissioners is vested with power and discretion to determine the responsibility of banks offering to act in the capacity of depositories, but the determination of the question must be made in good faith, and never at the mere will and pleasure of the board.

Appeal from Stanton district court; WILLIAM H. THOMPSON, judge *pro tem.* Opinion filed November 11, 1916. Reversed.

*H. P. Jones,* of Johnson, and *George Getty,* of Syracuse, for the appellants.

*F. S. Macy, E. W. Davis,* both of Liberal, and *Fred Robertson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a mandamus proceeding to compel the board of county commissioners of Stanton county. to designate the plaintiff, The Johnson State Bank, as the Stanton county depository. By agreement of the parties the cause was tried by Hon. William H. Thompson as judge *pro tem.,* the district judge being disqualified. From the judgment in favor of the plaintiff granting the peremptory writ of mandamus the defendants appeal.

For a number of years the defendants had been depositing all county funds in the First National Bank of Syracuse, situated in Hamilton county. On January 11, 1915, the plaintiff bank, which was legally authorized to do a general banking business and which is the only bank in Stanton county, submitted its bid to the defendant board at the regular session offering to pay two per cent interest on the average daily balances deposited in the bank, and at the same time it tendered a bond in the sum of $22,000 conditioned as the law requires. At the same time the First National Bank of Syracuse proposed to pay three per cent on the average daily balances, and it also agreed to take up outstanding warrants to the amount of $7600, for which provision had not been made, and to pay par for these warrants when they were registered and presented for payment. It offered a bond in the sum of $35,000 that it would account for the funds deposited with it. It was agreed between the parties that the average daily balances of Stanton county had never exceeded $21,000 and had ranged from $8000 to $21,000 during the year preceding this litigation. According to the averments in the answer of the defendants the Johnson State Bank had a capital stock of $10,000 with deposits in the sum of $3241.65, when the last report was made, and the National Bank of Syracuse a capital stock of $50,000 and a surplus of $20,000. It was alleged by the defendants that they gave due consideration to both bids and to

the responsibility of the plaintiff; that they considered and adjudged that the plaintiff was not a responsible bank as provided by law and that it was not financially able safely to carry out the terms of its contract. The court held that the answer did not set forth a defense and refused to receive evidence as to the responsibility of the plaintiff bank or the grounds upon which the defendants refused to designate the plaintiff as the depository. A number of preliminary and technical objections were raised at the trial, which are not deemed to be of sufficient importance to require comment.

The turning point in the case is whether the question of the responsibility of the plaintiff bank was a matter for the consideration of the board of county commissioners in acting upon its offer and in designating a county depository. The question must be determined by the statute providing for the designation, which is as follows:

"That in all counties of this state the county treasurer shall deposit daily all the funds and monies of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer, in his name as such treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners as county depositories. Such bank or banks shall pay interest on the average daily balances at such rates as may be agreed upon, which rate of interest shall not be less than two per cent per annum, and shall credit the same monthly to the account of such treasurer. Before making such deposits the said board shall take from said bank or banks a good and sufficient bond, in a sum double the largest approximate amount that may be on deposit at any one time; if a personal bond, or the bond of some surety company authorized to do business in the state of Kansas, in a sum aggregating the largest approximate amount which may be on deposit at any one time, conditioned that such deposit shall be promptly paid on the check or draft of the treasurer of said county; but in no case shall more than one-half of the amount of said bond be subscribed by the officers of said bank; and such bank or banks shall on the first Monday of each month file with the county clerk of such county a statement of the amount of money on hand at the close of business each day during the previous month, and the amount of interest accrued thereon during such month: *Provided,* That it shall be unlawful for the board of county commissioners of any county to designate as a depository for county funds, any bank in which the county treasurer or any member of the board of county commissioners shall be the owner of any stock or otherwise pecuniarily interested therein: *Provided further,* That if the banks in such county will not accept such money and pay interest thereon, then the board of county commissioners may designate some other bank or banks in the state of Kansas, which bank or banks shall give the bond hereinbefore provided for." (Gen. Stat. 1909, § 2163.)

As will be seen, the power to designate county depositories. devolved upon the board of county commissioners, and they are authorized to select them from the responsible banks of the county, but not those in which a member of the board has any stock or interest. The banks so selected are required to pay such rate of interest as may be agreed upon, but at a rate that is not less than two per cent per annum, and are also required to give bond and make reports at stated times. It is provided at the end of the section that if the banks in the county, that is, those spoken of in the early part of the section, will not accept the money and pay interest thereon the board may designate other banks in the state as depositories. Considering the language of the entire section, as we must in interpreting any part of it, we are of opinion that only responsible banks are eligible to designation, and that the determination of responsibility of banks is vested in the board of county commissioners. The banks referred to in the last proviso of the section are manifestly banks of the class named in the first part of the section, responsible banks from which the board is authorized to make a designation. It can not be conceived that the legislature was authorizing boards of county commissioners to select banks which they knew or had good reason to believe were not responsible. If a bank of the county, which is responsible, will accept the funds and pay at least the minimum rate of interest, the board is not warranted in placing the funds in a bank outside of the county.

While the power to determine the matter of responsibility is vested in the board, it must, of course, be exercised in good faith. The board can not arbitrarily or capriciously decide that a bank is irresponsible nor send the funds outside of the county upon their mere will or pleasure. They are required to exercise fair and sound judgment, and if they have followed the forms of law and made their decision in good faith it is not open to review.

The ruling of the trial court that no defense was stated in the answer of the defendants and in granting the peremptory writ of mandamus can not be upheld; but the issues of fact remain for determination, including the questions whether the responsibility of the plaintiff was determined arbitrarily or in good faith, and whether the plaintiff, if responsible, had conformed to the requirements of the law.

The judgment is reversed and the cause remanded for further proceedings.

DAWSON, J. (dissenting in part) : No authority is vested in the board of county commissioners to send the funds out of the county except as conferred by the statute. If a lawful bank exists in the county, and it offers the minimum rate of interest and a sufficient bond to protect the county, the authority to send the funds out of the county is wanting. This is wisely so. The local funds of a community are its commercial life blood, and should be kept in the community. I have no objection to so much of the majority opinion as holds that if the county board, in good faith, believes the local bank to be irresponsible, it need not and should not entrust such bank with the county moneys. But in such case the funds should be safely kept in the county treasury. The reason for this is because the board has been given no statutory power to do otherwise. If this interpretation of the law were given I apprehend that the county board would have little difficulty in determining that the local bank, lawfully chartered, and regularly and rigidly examined by the state banking department, and further fortified with a sufficient bond to insure its responsibility, was entirely solvent and trustworthy. If not, the situation would be likely to prompt the establishment of a solvent and responsible bank in the county or to compel such speedy reformation in the fiscal affairs of the existing bank as to banish every suspicion of its irresponsibility.

The student of this matter should not be misled by the seemingly small capital and deposits of the local bank. Stanton county has the least population of any county in the state— only 881 inhabitants. (Vol. 35, No. 139, Report of The Kansas State Board of Agriculture, quarter ending September, 1916.) The records and files of the secretary of state and of the state bank commissioner show that the bank was organized on December 13, 1913, and checked in to commence business by the bank commissioner on November 24, 1914. Prior thereto no bank had existed in the county since the collapse of the boom twenty years ago. (Records of bank commissioner.) The local bank had only been doing business one month and seventeen days when its bid for the county deposits was

ignored and the funds sent outside the county without authority. The local bank had not been running long enough to get into bad financial condition nor to warrant the slightest question of its solvency or responsibility, unless, indeed, its officers were deplorably and criminally negligent from its inception—which, of course, is not even intimated.

However, the issuable facts touching the good faith, of the county board, etc., may be determined in the further proceedings ordered by this court. I think the conditions under which the county deposits could be sent out of the county do not exist.